I'm Leonard Cervantes. I represent the plaintiff appellant Fernando Valadez. Unlike some of the cases that we listened to earlier, this case involves what I think are fairly simple issues. This was a simple rear-end collision case brought in the federal court through the diversity jurisdiction. The question was whether or not the defendant Watkins or its employee Watts was negligent in colliding with the rear of a vehicle driven by Valadez. Mr. Valadez spoke no English. He was here lawfully transporting cars. Police investigation, minor investigation occurred. The investigator supposedly interviewed the English-speaking defendant. Mr. Valadez and the witness were not able to speak in English, but the investigator wrote some things in the police report. So at the trial and in the deposition, Mr. Watts offered for the first time an explanation of the occurrence, which differed with what had been stated in the police report. And he testified that Mr. Valadez had his vehicle completely stopped on the highway. Mr. Valadez, according to the evidence, was in the process of slowing his vehicle to exit the highway to go to a gas station and then to stay, spend the night at a motel near the gas station. In an attempt to impeach this testimony, which seemed incredible under the circumstances, I called the trooper who signed off on the report. The investigating officer was in California. He was not able to testify. And I asked the trooper whether or not there was any mention in the police report under a particular section where quotes were attributed to witnesses, whether the defendant had ever stated that Mr. Valadez's vehicle was completely stopped on the highway. He said no, there was not. I went further and I asked about whether there was any, there was a section in which the police officer could write down specifically that the vehicle had been stopped on the highway. Defendant says that comes under the contributing circumstances section of the police report, but nothing about contributing circumstances was ever mentioned in direct examination. And the police officer explained that there was nothing in there to indicate that the police officer had checked that my client's vehicle was completely stopped. The officer who was on the stand was not the investigating officer. He was not. He was just reciting what was on the report. That's correct, Judge. And the report had previously been denied admission. That's right. And you were seeking to get some material that this officer did not know personally, but was reading from the report. And what happened then is your opponent found some other stuff which was contributing, possibly contributing, and that was changing the lane and no taillight. Was that it? Yeah, I think it was improper lane usage and vehicle equipment failure, but that was the gist of it was that there were no taillights. Now was that, by the way, had there been testimony about the same thing by the defendant in this case? The defendant never testified that the plaintiff had changed lanes. There was no testimony at all about improper lane usage. The testimony, there was testimony that he did not see any lights on the back of the vehicle, and as mentioned in the brief, we presented evidence that they had hooked on a set of lights to the vehicle in order to transport one of the vehicles. One of the vehicles was being towed on a tow dolly. Normally, if the officer had been there, would the police report or the actual report that he identified be admitted in evidence in Missouri? In Missouri, absolutely not. I don't think there's any dispute about that. And in particular, and I refer to various cases from Missouri in the brief, the courts have been very firm about the fact that conclusions made by police officers, especially officers who weren't there and witnessed the occurrence, are not admissible, and to receive those in evidence is reversible error. What about when the officer had the actual report in front of him to refresh his recollection? The officer who signed off on the police report, the officer who had the police report in front of him. No, but I say, can the officer who made the report, the one who was not there, he would be able to have that report in front of him. He would be entitled to have the report in front of him. He would be entitled to use the report to refresh some of his recollection, but he still wouldn't be entitled to it. And if he testified to something that was not in the report, would not, and was using it for recollection, would not opposing counsel be able to cross-examine him on that issue? Absolutely. If the investigating officer had been here, and since there was no mention in the police report of the statements that Mr. Watts was offering in his defense that the vehicle was completely stopped, if we had presented the testimony of the investigating officer, he could have been whether or not he made that statement, even though you didn't put it into the report. Your problem is that you opened the door, and that's what the judge said. Well, that's what I'd like to talk about, because, and there are various cases that are cited here, and I think what we have is basically sort of a law school examination question here, and that is the question about what is opening the door? What is the doctrine of curative admissibility? One of the cases that I mentioned in the brief, I The business of opening the door is a much overused issue, and it carries with it an oversimplification. Opening the door is one thing, but what comes through the door is another. This is U.S. v. Winston. There's a more important language there, and we see this all the time when we try these jury trials. Frequently, someone will argue about opening the door. I don't think, I think the judges and the doctrine of curative admissibility is, one, dangerously prone to overuse. Permission to explore and rebuttal with testimony not admissible on direct, on the grounds that the other party has opened the doors, rests upon the necessity of removing prejudice in the interest of fairness. This is probably the most important statement from the Winston case. The doctrine is to prevent prejudice, and is not to be subverted into a rule for injection of which is exactly what happened here, because I was attempting to impeach the credibility of a witness who, for the first time, says, my client's completely stopped on the highway, never tells that to the police officer. The question that I asked was, is there any, is there another box where it could have been checked that he reported that he was completely stopped? He said, yes. He said it wasn't checked. End of question. Incidentally, I have to remind the court that at various points in the trial, first of all, in the motion in limine, Mr. Swift said, I'd like to present that evidence, and Judge Hamilton and I objected to it. Judge Hamilton said that's not coming in. So now we get to this point, because I asked the question about checking the box about whether the vehicle had been completely stopped. Joe says, well, he's opened the door. And the judge, I think, did what so many lawyers and judges do, is she misunderstood the concept of curative admissibility and opening the door, because the cases say, and U.S. versus Whitworth is also cited in my brief, that this doctrine of curative admissibility, opening the door, applies where there's the introduction of evidence. And I want, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission. At any point, was there a discussion? I didn't see it in the record. I mean, it seems like you offered it for impeachment, correct? Solely for impeachment. And was there any discussion of an instruction  only to determine? Because in the record, the fellow said the other thing, right? He said, yes, he was stopped. That's for the jury to determine, right? That's for the jury to determine. So was there ever any discussion of an instruction to let the jury know why those questions were asked? No, there wasn't, as far as I can recall. But in the course of the usual trial, the witness gave the impression that something else had happened. And then at the trial and in his deposition, volunteered this new theory or defense, which is that the vehicle is completely stopped. So in terms of curative admissibility, if that principle was properly applied, the court would have to determine, number one, the evidence that I present that this box had not been checked, that he had been completely stopped on submit to the court that it wasn't. It was just further impeachment because there were various locations on the place. It wasn't in a way inadmissible because the fact that a box is not checked is not evidenced of what happened. It's just that for some reason, that wasn't covered. And you put that in for the purpose of showing impeachment of your opponent. And that's a little bit of questionable, too, but apparently no objection was made. Correct. Now, once having done that, I think you're in a tough spot. Well, let me tell you why I think that there are two reasons. Two things we have to look at. One is the testimony that I presented concerning the box related to the conduct of Mr. Balladist. So Mr. Swift was permitted by the court to ask about whether other boxes had been checked concerning the conduct of Mr. Balladist. But then he took it a step further and he asked about the conduct attributable to Mr. Watts. How did I open the door concerning the conduct of Mr. Watts? And this is really the most damaging piece of evidence that came in under the explanation of opening the door. And that is that he asked the police officer, Well, what about the for Mr. Watts? The police officer said none were checked. And then, of course, the jury came back with a verdict, finding no fault on behalf of Defendant Watts. This is a rear end collision. Somebody had to be at fault here. The explanation was, in my opinion, a preposterous explanation. Then it was supported by and buttressed by this testimony from the police officer that not only did I check some boxes for Balladist, but I didn't check a box for the damning evidence came in that allowed the jury to conclude that Mr. Watts was guilty of nothing in a what should have been a simple rear end collision. Pardon me? The jury didn't find anyone. Well, I understand that, Judge. But, you know, I think we all know that in these jury trials, when the jury is given the option of signing a zero and a zero and a zero and attributing no fault to anybody, it's still a defense verdict. I don't think it really makes any difference whether they attributed 100% fault to the defendant or, in this case, 100% fault to the plaintiff and zero to the defendant or zero to everybody. It's still a defense verdict. And I know that in the defendant's brief, they say, well, they didn't find any fault on the part of anybody, but they didn't find any fault on the part of Mr. Watts because there was evidence admitted that the police officer checked none for contributing circumstances. How did I open the door to the conduct of Mr. Watts? What's our standard of review? Well, the standard of review is to give... It's an abuse of discretion standard of review. It's a trial court abuse of discretion. Abuse of discretion. So we give the trial court the benefit of the doubt very often. Well, you do, but sometimes... You have to say, clarity as a matter of law and clearly prejudicial. And in the brief, I refer to many cases, mostly out of the state of Missouri, which recognize that it is clearly prejudicial to let this testimony in because the police officer is going to be given the most... His testimony is going to be given the most weight. And nearly every case that I've cited in the brief that comes out of Missouri that touches on this issue about whether the police officer's opinion should be admissible, they all say they should not be admissible. There's no reason why the police officer who arrived 20 minutes later wasn't a witness to the occurrence. And you have the police report in the appendix. There's nothing in there that indicates that he did anything other than interview the witnesses, two Spanish speaking witnesses and an English speaking defendant. So how could he have reached those conclusions? They were pure speculation. It's happened so often when we have police reports that are written. I think that the real problem was not just that Mr. Swift introduced the evidence about the conclusions concerning Mr. Balladus' conduct, but more importantly, he introduced evidence concerning the conclusions concerning Mr. Watts' conduct, that he did nothing to contribute to cause this accident. And that evidence caused the jury to think, well, apparently he didn't, and that would be certainly a plausible explanation why they checked zero in terms of fault. Somebody had to be at fault here. This was not an accident. Is the prejudice question a matter of state law or federal law? Well, I think it's a matter of federal law, but the cases indicate that there's presumed to be prejudice. And I think it's up to the defendant then to try to dispel the notion that there is prejudice, at least according to the cases that I've cited in the brief. Although I think the state law is instructive because in Missouri, all the cases that I've cited in the brief indicate that it's prejudicial, and where that evidence has come in, concerning an officer's conclusion. Time has expired, Mr. Chervantes. Thank you, Your Honor. If I may please explore, Mr. Chervantes. Good morning. My name is Joe Swift. I represent Dennis Watts and Watkins Motor Lines. The appropriate standard of review is whether or not Judge Hamilton abused her discretion with respect to allowing, I guess, the doctrine of curative admissibility in the case, and also whether or not the plaintiff has proven or shown to this court that they were prejudiced by that ruling. I think Mr. Chervantes takes some liberty in saying it was simply for impeachment with respect to what he was asking Trooper Hicks about. The court... Well, his questions were focused solely on whether the vehicle was stopped or not, right? Well, sir, he did in that sense, but... And he also never referred to the boxes as being, quote, contributing causes. Right, but Trooper Hicks, on page 81 of the transcript, Your Honor, said that unless Officer Flanagan, who was the investigating officer, could not prove it, he wouldn't mark those boxes. In my view, and I think in the trial court's view, Judge Hamilton's view, we went beyond simple impeachment of a witness for statements made or not made at the scene. Whether or not Mr. Watts' testimony, and that was actually in July of 2012, about six years after the accident, or more than six years after the accident, whether or not he was actually being impeached by this officer, not proving or not proving what was said or not said at the scene. And if the court will look... And actually, what we're trying to prevent here is the false impression. If the jury would have been left with the impression Mr. Chervantes asserted or put into evidence, it would have been that Mr. Valadez was not stopped in the lane and Mr. Watts' must have been at fault because Mr. Valadez was not stopped in the lane. Part of the... I'm sorry. Is that necessarily so? It seems to me that the difference here is who got into the conclusions that the officer about the causes. And did he, in his examination, cross over into that and... Yes, sir. If I may, page 81 of the transcript, Mr. Chervantes is still questioning Trooper Hicks, who was the reviewing officer, not the investigating officer. You didn't object, did you, when the question was asked? No, I did not, Your Honor, because I thought Mr. Chervantes was opening the door. In fact, there are cases that say that if you do object, you don't get the benefit of asking for the curative admissibility. Well, what bothers me is just what my colleague here said, that no box is checked doesn't mean... It really means what you really said. The officer didn't have any evidence one way or the other. And really, the plaintiff was using that for an improper purpose to say, well, the officer concluded that there was no stopping and that's going in a little bar. But then, to go into what boxes were checked, well, it's a little bit dangerous. Well, Judge, I believe Mr. Chervantes, though, by going into what boxes were not checked, was the one that was testing, I guess, the theory of curative admissibility or the practice of curative admissibility. He's the one that would have left the jury with a false impression that Mr. Valadez was not stopped on the roadway, that the investigating officer or this reviewing officer, Woody Hicks, did not find that Mr. Valadez was stopped in the roadway, thereby both impeaching Mr. Watts and then also saying that Mr. Valadez was not at fault for this 2 a.m. in the morning accident. Yeah, but is he really getting into the officer's... I mean, I agree with you. He certainly was trying to leave the impression that the vehicle was not stopped and that certainly that no one told the officer that the vehicle was not stopped or he would have presumably checked the box. But how do... And arguably some hearsay came in that probably shouldn't have. He was able to talk about what was on the report. But how can you go from that to clearly getting into what the officer's conclusions about who was at fault? I think Mr. Chervantes did get into the officer's conclusions, page 81 of the record, line 11. And if it's been reported to the police officer that someone claims that a vehicle has been improperly stopped on the highway, he can check that box, correct? Answer, if the officer can prove that it was stopped on the highway. My point is that that now has become an officer's proof or conclusion. That's what the jury heard. So therefore, I think the jury is also entitled to hear the other things the officer proved or could not prove. And in fact, the Broomfield case, the Robinson versus CSX, the Wright versus Arkansas, Missouri case, and the State Court case of Grever Mule all deal with opening the door or the spirit of admissibility. The jury would have been left with the impression that Mr. Valadez was not stopped on the highway, and Mr. Watts was therefore at fault. Addressing some of Mr. Chervantes' other concerns, this was not a clear liability case. He still had to submit the negligence of Mr. Watts on the roadway. And in fact, the court can look to the instruction that was, I think, page 140, excuse me, 154, 145. Before you move on, I just have... I wanna follow up on that issue. Let's just say, okay, maybe... For purpose of this question, let's assume that your questions were okay, that he opened the door enough to at least talk about what was else checked. In other words, the way the district court ruled on it. But then she specifically said, you can mention the boxes that were checked, but you can't draw any conclusions from it. Do you think you violated that when you opened your closing argument with, here's what the officer's report said about who's at fault? I just talked about what the checked boxes were, Your Honor. So your view is that that wasn't a violation of her restriction. Look, talk about the boxes, but not the conclusions. You don't think you crossed that line? No, Your Honor. And then this was brought up to the trial court. She obviously was there, witnessed the whole thing. This was brought up in the motion for new trial. And Judge Hamilton obviously didn't think I was over the line or there was any kind of prejudicial error or error in terms of her ruling, because she didn't grant that ruling. Well, not just in the closing, but in cross examination, you said, and that box is, quote, probable contributing circumstances, close quote, true? Yes, sir. You identified that, and that's where I did, with respect to going forward after Officer Hicks said that Officer Flanagan could not prove that it was stopped on the highway. They went beyond a factual determination. Mr. Cervantes went beyond the factual determination by getting into Officer Flanagan's conclusions about what he can prove or disprove. Did the report put in evidence? Yes, I believe the report itself was in evidence, but with limited... I don't think it was passed to the jury or anything of that nature. What? I don't think it was passed to the jury. I believe the report itself was in evidence, but I don't think the content or the substance of the report would have been passed to the jury. It was not given to the jury? No, sir. So it's in the record? It's in the record, Your Honor. It's paid to... See, what bothers me a lot, too, is that this material was pure hearsay because of the officer who prepared the report wasn't there. Yes, sir, and... Isn't that right? Yes, sir. It was Officer Hicks, the reviewing officer. Yeah, but he wasn't the guy who made the investigation. Yes, sir. Officer Flanagan or Trooper Flanagan did the investigation. Pardon me? Trooper Flanagan was the investigating officer. Yeah, and he wasn't there. He was not there, Your Honor. I've tried a lot of lawsuits, too, where the officer is there and he reports what he saw, subject to trial, cross examination. This one was kind of up in the air. Well, Judge, again, because Mr. Cervantes went into improperly stopping the highway, and he didn't have to, and in fact, later in Officer Hicks' testimony, he asked him about the narrative statements recorded by Officer Flanagan. So if his true intention was to simply impeach Mr. Watts' story that it was stopped in the roadway, he had the ability to do that and did do that. Let me ask it this way, because the question that elicited the answer that you says opened the door was pretty limited. He says, and if it's been reported to the police officer that someone claims that a vehicle has been improperly stopped on the highway, he can check that box, correct? And then the answer is if he can prove it. Yeah, and then... So do you think that question... That answer, because he said proved it, and then the following question, Mr. Cervantes doesn't stop there. Okay. Well, he goes on to say the police officer didn't check that my client was improperly stopped on the highway, correct? Which again is a conclusion. Same question. It's still a conclusion though, improperly stopped on the highway. No, he didn't check the box. Yes, sir, but that's calling for, I guess, an opinion of Officer Flanagan, because Officer Flanagan didn't witness the statement either. To me, that opens the door as the other things the officer did or didn't do, because it would have left the jury with a false impression as to who was at fault for the accident. If there would have been no further questions about this, no further testimony, the jury would have gone back thinking that the investigating officer had not stopped in the roadway box for Mr. Valadez, and therefore Mr. Valadez was not at fault. That was the... Because if the court goes further into the transcript, if the impeachment truly were Mr. Cervantes' only intention in asking those questions, he could have done it more easily by looking at the narrative portion of the police report, and he did ask Mr. Hicks what was recorded by Officer Flanagan as to what Mr. Watts said and didn't say at the scene. Are there any cases that say that the answer can be the trigger for opening the door, as opposed to the question? I don't know, Judge. I just don't know that answer. I'd like to say there were, but I don't have any answer for you. I just looked at the cases that do open the door, where the officers are asked things in the police report. In fact, the Robinson versus CSX case, where the court, I guess, unjustly limited the incident report because the plaintiff then testified it was the truck in the roadway and not the railroad. But the court allowed... Or excuse me, the court found that had to be an error. Also, Judge, I don't think that there's been any showing that the plaintiff was, in fact, prejudiced. The jury came back 0-0. And in fact... Let me ask you this. Was there any other testimony in the record that the plaintiff stopped outside of what was testified in this examination? Any other live testimony that the plaintiff had stopped going off the highway? It was Mr. Watt's testimony. Mr. Watt's, our driver, who was following, said, it looked like it was stopped to me. Remember, this was at 2 in the morning. Said it looked like he was stopped? Yes, sir. So that was his testimony. And what about the other boxes? Was there testimony about there being some defect with the vehicle? And what was your other claim? No, the other one was improper lane usage. Improper lane? Right. Well, improper lane usage, not proper lane. When you go off the highway, there's only one lane, isn't there? Well, this was two lanes, because it was Highway 44, or Interstate 44. You mean when you went off, there were two lanes? Well, the travel portion of the roadway in the area of the accident was two lanes westbound, two lanes eastbound, generally. Okay. But for vehicle defect, at least Mr. Watt's testimony was that the rear of the vehicle was not sufficiently lit for improper lane usage. It was submitted that Mr. Valadez was going slower than the 40 mile an hour speed minimum in Interstate 44. So there was some evidence to support those conclusions, or Trooper Flanagan's, I guess, impressions, I don't know if conclusion is the right word, with respect to the accident vehicles. But again... Your argument has been, and I'm thinking about this, that you were concerned that once the question was asked about the box being checked regarding improperly stopped on the highway, that the jury would be left with the improper impression that he actually was not stopped, correct? Is that what you're... You've got Watt saying he was stopped. Right. You say that this is... This is sounding like substantive evidence from a trooper that he was not stopped. Yes, ma'am. How does... There are boxes that are checked. Help the jury know whether or not he was stopped. It's not so much that he was stopped, it was the official conclusion of the officer in terms of his investigation of the accident. So your position is not simply that you're trying to clear up for the jury this one particular issue, was he stopped or was he not? It's who's at fault. Well, that and the false impression that was left by the trooper saying, or being allowed to say, that Mr. Lane was not checked. So the false impression is the overall... Yes, yes, ma'am. The overall fault. Right. And again, it's a lot of the cases Mr. Cervantes cites, the... Our boys in blue, if you will, the Missouri State Patrol, or give it great weight. And the problem for me would have been if the trooper were only simply allowed to give the testimony that he gave about... That Flanagan could not prove it, or if he could prove it, he checked the box, then the jury's left with a false impression that Mr. Valadez was not stopped on the roadway, which is contradictory to what Mr. Watts' eyewitness testimony was. So it's not necessarily false too, it's for the jury to decide. Pardon me? It was for the jury to decide whether he stopped or not. Yes, ma'am. And there was no limiting instruction requested or anything that would have somehow limited this to impeachment or anything to that regard. So we would ask that you affirm Judge Hamilton's wise discretion in this case. Thank you, Your Honor. Was this case initially filed in the federal court? Yes, sir. Thank you. Thank you, Mr. Swift. Mr. Cervantes, you used your time, but I'll give you two minutes. Oh, thank you, Judge. And I have a question right off. Absolutely. When he says that the officer can prove it was stopped on the highway in response to your somewhat limited question, and then you follow up with it, and the police officer did not check that for my stopped on the highway, correct? He did not check that. Haven't you then linked and basically said the officer must have concluded that he couldn't prove that it was stopped? Well, I guess that's something that you're gonna have to draw your own conclusion about. Obviously, my question was limited to something and the answer went beyond the question that I asked. But then the follow up sort of reinforced that. I understand what you're saying. But nevertheless, when we talk about opening the door, the... And Joe says the jury was left with a false impression. There really was... If there was any false impression at all, I guess, and I don't believe that there was, the impression that the jury should have been left with was that Mr. Watts never reported any of this to me. That was the purpose of the impeaching testimony that I was trying to elicit from Officer Hicks. But Joe says... Where was Officer Flanagan? Was he subpoenaed? He was in California. I think he was working for the DEA or doing something entirely different and he was not subpoenaed and we didn't bring him in. And nobody took his deposition? Nobody had taken his deposition. But clearly, Officer... The transcript reveals that Officer Flanagan had not arrived at the scene until 20 minutes later. No investigation was taken. He just wrote down some conclusions. But there was no... If there was a false impression left, the false impression would have been that... And I submit that there wasn't. The impression was that what I was trying to prove was that he didn't complain to the police officer on something that was so important that you would have expected him to complain to the police officer, and therefore, that served as impeachment. But for Joe then to go and ask about those other issues, I believe, went beyond the notion of opening the door or rebutting a false impression because it went to issues that were not part of the false impression. I guess I'm out of time. Thank you so much. Thank you, Counsel Week.